Good morning. I please the court, Greg Shibley for Javier Juarez. Mr. Juarez's former counsel, Mr. Baker, who is the cause of the exceptional circumstances claimed in this case, is the one who filed this appeal and submitted the brief. However, we have substituted in subsequent to that. Mr. Baker was ineffective in two major respects. One, in that he never gave any notice to Mr. Juarez about the September 13th hearing. And two, that he made misrepresentations to the court that prejudiced Mr. Juarez's case. Mr. Shibley, may I just clarify something here? Yes. You became Mr. Juarez's counsel after the brief he stays of this appeal. Is that correct? Correct. Have you informed the court whether since that time Mr. Juarez filed or intends to file a state bar complaint against Mr. Baker? We have not filed a state bar complaint against Mr. Baker, as might be required in Lozada, because Lozada says that a state bar complaint is not necessary as long as an explanation is given. And we have, in filing another motion to reopen with the BIA, we have managed to get a declaration from Mr. Baker, who has since admitted in that declaration that he misrepresented to the court about sending written notice to Mr. Juarez about the September 13th hearing. And also, he has been, let's say, sufficiently compliant in working with us, which is another option under Lozada that would excuse someone from filing a state bar complaint. And we've told the BIA... Is he excused under matter of Lozada? Is he excused? Mr. Juarez, for making a complaint about Mr. Baker. The motion to reopen is still pending with the BIA. We've made the argument, and we've said that if required, we will still make that bar complaint. But as we read it, we believe that it's all been satisfied. We haven't heard a decision on that yet. I understand your position. Thank you. One other question. As I understand it, tell me if this is wrong, you're proceeding under the, whatever it is, exceptional circumstances in which this type of ineffective assistance can satisfy that. I'm not sure to what extent that's different from just proceeding under ineffective assistance. But you can satisfy the ineffective assistance if you do. I mean, you can satisfy the exceptional circumstances by showing ineffective assistance, is it? Correct. And at this stage of the proceeding, because you haven't presented exceptional, you haven't presented ineffective assistance to the board, but you can proceed under the exceptional circumstances exception on the theory that certain ineffective assistance constitutes exceptional circumstances. I think that's exactly it. In Mr. Baker's opening brief, or excuse me, Mr. Juarez's brief that was drafted with the assistance of Mr. Baker, he did stop short of using the term ineffective assistance, but essentially that is what is being described in there. And the respondent's answering brief talks only of ineffective assistance. So that seems to be the issue. If we want to frame it more in terms of exceptional circumstances, specifically if we want to use that verbiage, then that's fine. I have a question. These facts, I take it, are not contested. What happened was his former lawyer, Mr. Baker, left him three phone messages to call his office, but didn't tell him that the hearing was scheduled the following week. Is that basic what it is? That's essentially it. There are also a few facts that I believe were misleading and that were never really clarified. For example, Mr. Baker, you can see in the transcript at the individual hearing on September 13th, he told the immigration judge that he had sent written notifications, he had sent a letter to Mr. Juarez telling him about the September 13th hearing. As it turns out, that was not true. The only correspondence he's ever sent was on July 20th, which was two weeks before the August 5th date when the September 13th hearing was scheduled. Mr. Baker never corrected that misrepresentation to the immigration judge, never corrected it to the BIA, and never corrected it in this appeal. And so that has gone in. In fact, the respondent's answering brief emphasizes that a lot, that Mr. Baker had sent him a letter. But when you look at the facts more closely, you see that that letter had nothing to do with notice of the September 13th hearing. Well, now, there was a hearing that was set for October 21st, and that's what Mr. Juarez had been informed about. Correct. He had not been informed that the immigration judge had ordered him deported because of Mr. Baker's failure to file documents, and that Mr. Baker then got that order set aside, and then they gave him a September date, and Mr. Baker never told him about the September date. Correct. There has been some vague assertions that phone calls were made. However, no dates are given of these phone calls. Well, the assertions that there were either two or three phone calls made, because one phone call is referred to in the July 10th letter, and the other two are unidentified, but there's no indication on those phone calls when they left messages that he was told about the new date. There's no indication of the substance of the messages. There's no indication of the days that they were left, the times that they were left, which seems to me are all things that typically are in an attorney's notes. So maybe they're out there, maybe they're not. Is it disputed that Mr. Juarez went to Mr. Baker's office the week before the September hearing, dropped off documents, and was not told about the hearing then? It is not disputed. It's not disputed, in fact, that there was no letter from Mr. Baker's office telling Mr. Juarez about the September 13th hearing. There was no copy of the notice of the hearing sent to Mr. Juarez, and when Mr. Juarez was in Mr. Baker's office just days before the hearing, face-to-face, nobody mentioned it to him. And to me, that is the key thing here, that even if there had been 100 letters and 1,000 phone messages, when you have a client in your office, face-to-face, days before his hearing, to decide whether he's going to get removed from the country, it should at least come up in conversation, but nobody mentioned it will see at the hearing on the 13th, or do you have any questions, or anything. And even though in the Respondent's Answering Brief they say that Mr. Baker made reasonable attempts to inform him, that just isn't reasonable. I'd also like to point out very quickly, although the Respondent's Answering Brief tries to paint a picture of Mr. Juarez as a client who was not particularly involved in his own case, who was essentially ignoring it, I'd like to mention that except for the September 13th hearing, which he didn't know about, he never missed a hearing, he never missed an appointment. In fact, he even came here today. He got here before I did, in fact. He is absolutely a client who has always been involved with any of this case, as long as he knows about what's going on. I'd like to reserve the rest of my time for rebuttal, please. Good morning, Your Honors. May it please the Court, my name is Lauren Fassette, and I represent the Respondent of the United States Attorney General. Here, the Board did not abuse its discretion, and that's the standard we're looking at, in denying Petitioner's motion to reopen or rescind his inabstential order, because he failed to establish an exceptional circumstance to excuse his failure to appear. That's the only issue we're looking at, is whether he established an exceptional circumstance. And the answer is no. An exceptional circumstance is defined as circumstance beyond the control of the alien, including battery or extreme cruelty to the alien, serious illness of the alien. Well, let's talk more about the legal cases, like failure to tell a client to appear at a hearing can constitute exceptional circumstances. Sure. Or gave the wrong date to the alien. That's an exceptional circumstance. Yes, Your Honor. There is case law in this circuit that says ineffective assistance of counsel can be an exceptional circumstance. And those are two examples. Yes. And those examples are distinguishable from what happened here. In those cases, as Your Honor has pointed out, involve aliens proactively calling the attorney to ask about their case, and being specifically misled, told the wrong date. Well, he was told an October date originally, wasn't he? Originally, his case was set for October, which he was present for. He was never told it had been changed. Well, in fact, if we look at the facts here, the attorney, previous attorney, said in an affidavit several times that he and his staff called and left messages for the petitioner. Never gave me the date. Never said your date was changed. We don't know what he said. He just said that. All right. So all we know is that he was told it was an October 21st hearing. Originally, yes. And we don't know that he was ever told the date was changed. Well, first of all, to make an ineffective assistance of counsel claim be an exceptional circumstance, generally he still had to comply with the law. Is it correct that all he was told was to call his lawyer? In the letter in July, he was told, please contact our office immediately to make an appointment to discuss your case. That's in July. Nothing happens. He doesn't do that. Does the record show what the phone calls to him said? The record shows. You don't have to read it to me. Just tell me. Does the record show that he was told to call his lawyer or just that his lawyer called him or what? The declaration of the attorney said, I instructed my staff to inform respondent of his new master calendar date. The staff left messages asking respondent to contact us about his case. Why didn't they leave a message saying here's the new date? I don't know what they left in the message. Well, it tells you in the affidavit. He says I told him to tell him of the date. He then doesn't say my staff left a message about the date. And he was in the office a week before the new date, wasn't he? He was in the office a week before. The attorney was not present. It was not a face-to-face conversation. No, it was his staff. It was his secretary. He left documents with the secretary. But there's also no indication from the petitioner that he asked, what is the status of my case? When is our next hearing? Why didn't he ask? He knew he had a date for October, for the next month. Well, he'd also, according to the attorney, had three messages that he should call and talk about his case. And there's no indication from the petitioner that he at any time called. A message to call your attorney about the case is hardly a message that there's been a change in the hearing date. He might have thought that all the lawyer was calling him was he wanted more money. We don't. Well, I don't know what the message. The message could have said the date. You don't know that. And that is petitioner's burden to establish that. Which, if we can take a step back for a moment, initially, generally, a petitioner needs to comply with the requirements of those audits to make an ineffective assistance of counsel claim. Now, it is true that those requirements are not sancro-sanct, and they don't have to be strictly enforced in certain circumstances. But the exception is where it is clear on the face of the record that the attorney was so terrible that it was clearly ineffective assistance. Well, if you don't think it's clear from this record that the attorney was so terrible, I hope you never get an attorney like that. I don't, Your Honor. He failed to file the papers when they were due, and therefore, he was ordered deported. The attorney never told him that that had happened. Then he got it reopened without ever telling that to his client either. He sent a letter telling him to call the office, but still never told him about the deportation order, which had not yet been vacated. He never notified him of the new date. But although his client knew that it was coming the next month, he was there the week before. There must have been ‑‑ I don't know why he went to the office. Somebody must have told him to come to the office and leave documents. He came and left documents. Still nobody told him about the hearing. You know? Well, Your Honor, I think it's arguable, but here the attorney says he left a message when the first inofficial order removal happened. And we don't know what was in that message. Then he sent a letter while the motion to reopen was still pending, the original motion to reopen. When he got the new date, he said he and his staff left three messages saying either what the date was or to call when you talk about your case. That is unclear from the record, which is part of why we have the Lozada requirements, because one of the policy reasons for complying with Lozada is to lay out these facts in a record. Pretty clear from his affidavit, he says he told his staff to tell him about the new date. The staff told him that they had called and left the number and left a message asking to contact him. Correct. And then Petitioner did not. He never claims that they told him about the new date. He also never claims that he then called the attorney back and asked what is going on with my case. I got your letter. I got your three messages. But he did come in and drop off documents. Which implies that he got the letter and still didn't ask about his case. What letter? The original letter talking about needing to come in to discuss his case. That was in July. Correct. So basically between July and September 13th, we have no testimony evidence declaration from Petitioner saying that he in any way tried to contact his attorney to ask about his case except for coming. Let's go for a minute to September 13th. Sure. The hearing, as I understand it, was at 830, and you showed up, what, two hours and 20 minutes late. That's right. That's what his declaration says. He arrived after the conclusion of the master calendar hearing. It's unclear whether the attorney, whether the immigration judge was still on the bench, I take it. No, it is not unclear. It is clear that the judge was off the bench. Is that conceded by your opponent? Yes, that's conceded in Petitioner's. Does the record show whether the immigration judge was still in the building? The record does not say that, but it does show that the immigration judge was off the bench and that the hearing for the day had been concluded. And that's not a challenge that Petitioner ever raised in his opening brief or before the board saying that he had been there and that the judge was on the bench and that somehow he didn't actually fail to appear. He's always conceded that he failed to appear, and we're only looking at whether he established an exceptional circumstance for that failure. But he appeared, once he was called and received notices, he came right down. He got down there as soon as he could. Isn't that true? That's what his declaration says. However, he doesn't contest that he got there after the conclusion of the hearing. He didn't know about the hearing. But the attorney also ---- Why do you ---- I shouldn't ask these questions about why you're here, but ---- Well, if we look at the other cases where this Court has found that the ineffective assistance was clear on the record, those cases involve the attorney taking specific action to mislead or lie outrightly to the alien, saying ---- Deliberately? Excuse me? Is it failure to tell his client to appear at a hearing? He did that deliberately? In the other cases, the attorneys specifically said, your date is a different date, or you don't need to show up, I have it all handled, or don't worry, I have filed your application, when in fact they were lying. In this case, we have an attorney who ---- Who didn't tell him. Who left three messages either saying the date or telling him to call. And we have nothing from the ---- But he did come in the week before. He came to his office the week before. We have no information that he called ahead saying, I'd like to speak with the attorney when I'm there. He didn't call when he didn't ---- When the attorney wasn't there and he dropped off papers, there's nothing in the record that indicates he asked. Did he see, when he came in the week before, did he actually see the attorney? The record indicates that the attorney was not in the office when he came and that he simply left papers with his secretary and then left and did not inquire about his case nor ask to see the attorney or talk to the attorney. What did he inquire about? He had a hearing in October. Well, if your attorney leaves you three messages saying either there's a new date, which we don't know ---- I don't know what these messages were. What message was before the first letter in July? There was one message before the first letter, and then there were three messages somewhere between ---- That's not clear that there were three messages after July. In the attorney's declaration, he says that after he received notice of the new hearing date, on the record at page 68 ---- Which paragraph of the affidavit? Number 5, in the meantime, he prepared and filed a motion to reopen. He received the order from the immigration judge and setting it for a master calendar hearing on September 13th. I instructed my staff to inform respondent of his new master calendar date. Now, part of why ---- Why does it say there were three messages after July? If you continue reading number 6, once again, the staff informed they called respondent's telephone, but were unable to reach him directly, and the staff left a message. Why does it say three messages? Three times. In his, I believe, in his motion to reopen ---- I don't think it makes a lot of difference whether they called two or three times and said contact your office, our office. At least one time, he came in response to one of those messages. He never says that he came in response. That's the problem. Well, he just suddenly dropped off documents out of the blue. He said, gee, I think it would be a good idea to go by my attorney's office and drop off documents. Well, that's the problem here. We don't know, and that's why we have Lozada, so that the attorney and the alien can lay out what happened. Well, they have. They've laid out. You've got the attorney's affidavit. You've got his statement. Well, and to the extent that ---- That's not ineffective assistance, never telling the client that you had screwed up, and that's why the date was changed, and now you've got an earlier date, never telling him what you did, that you didn't do what you were supposed to do, so they ordered him deported, and he had to change that, and as a result, he got an earlier date, and you never tell the client about that. If that's not enough for you, I don't know what is. Well, he tried to tell the client about it by leaving these messages, and to the extent ---- And not leaving a message that your date's been changed. Well, to the extent that what those messages said is at issue, that's why the board found that it's not clear on the face of this record and that a compliance with Lozada would have laid out and given the attorney an opportunity to address the petitioner's challenges that perhaps saying the messages did not say a date. What is the government ---- Is the government's basic position in this case that ineffective assistance of counsel had not been shown? Is that your basic position? Well, our first position is that since he didn't comply with Lozada, it can't constitute ---- Answer to my question. Is that your contention or is it something else? Don't tell me what it is. Is it easy to tell me it is your contention or it isn't? It is our contention that ---- Can't you answer it? Yes, sir. Is it your contention that on this record, ineffective assistance of counsel has not been shown? Is that your basic position? I will say ultimately that's the contention, but under the way that this Court looks at it in this circumstance, it's because he didn't comply with Lozada, the ineffective assistance has to be clear on the record. And here the Board did not act irrationally in concluding that it's not absolutely clear from the record. Can I ask you a different question? Sure. Is it your basic position that what happened in this case would have been a series of mishaps and at some point the administrative judge, presumably on September 13th, when he didn't show up again at the 830 hearing, in effect said I've had enough of this. I just can't rely on this man. That's the end of it. And that that was, in effect, a not unreasonable decision by the administrative judge, the immigration judge. Is that your basic position? Well, no, I mean I have no idea what the immigration judge was thinking, but that's not what we're looking at here. We're not reviewing the immigration judge's, the correctness of the immigration judge's inessential order. We're looking at now in this motion to reopen, because that's the only thing that we're on appeal here today, did he establish an exceptional circumstance beyond his control that warrants an exception for his failure to appear. And here with the attorney at least attempting to let him know about his hearing, leaving messages, the petitioner not saying that he in any way responded to those messages or called and proactively asked about his case, the Board of Immigration Appeals did not abuse its discretion in finding that it's not clear on the face of this record that any claim of ineffective assistance of counsel would be an exceptional circumstance here. Okay. Thank you. Thank you, Your Honor. Just a few things, Your Honor. First of all, Mr. Juarez put in his declaration that he never heard or received those messages. I think it's debatable whether they ever even existed. But he did come into the office for some reason. No, that's true. That's true. But the messages in question, we don't know what was said and he can't tell us what exactly was said. I'm not sure. I think, though, that I'd like to emphasize also that the immigration judge at the hearing, at the very beginning, I think it's on the second page of the transcript, found specifically that there were no exceptional circumstances because he relied on Mr. Baker's representation that he had sent a written letter about that hearing date. And the BIA accepted the immigration judge's findings of no exceptional circumstances. But if we go back and we look at that letter, it was dated two weeks before the hearing date was even set. Also, there are plenty of cases of ineffective assistance of counsel that do not have to do with the attorney or the representative lying. It can just be plain old being ineffective. Fajardo v. INS, 9th Circuit, 2002, has almost identical facts. The client was not given direct notice of the individual hearing. The client made periodic inquiry into the case. Notice of the hearing was sent to the representative, but it was not forwarded to the client. Therefore, the client failed to appear. It was in absentia removal order. And then the representative actually drafted the motion to reopen and did not even explain his role in the client's failure to appear.  Pretty much the same facts that we have here. That is Fajardo v. INS, 300 F. 3rd, 1018, which thankfully was cited in the respondent's answering brief. All right. Thank you. Thank you.
judges: Friedman, Nelson D. W., Reinhardt